IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2010

## CHRIS JONES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Chester County**
**No. 08-CR-17    Donald Allen, Judge**

————————————

**No. W2009-01844-CCA-R3-PC  - Filed September 9, 2010**

————————————

The Petitioner, Chris Jones, appeals his denial of post-conviction relief.  The Petitioner pled guilty to two counts of sale of cocaine in an amount more than .5 grams, a Class B felony, and one count of sale of cocaine in an amount less than .5 grams, a Class C felony.  Pursuant to a plea agreement, the Petitioner received sentences of 12 years for each of the Class B felonies and 6 years for the Class C felony.  The trial court ordered the sentences to be served concurrently with one another but consecutively to a ten-year sentence imposed in a separate case.  In this appeal as of right, the Petitioner contends that he received the ineffective assistance of counsel at his guilty plea hearing.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

John E. Talbott, Henderson, Tennessee, attorney for appellant, Chris Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

### OPINION

The Petitioner pled guilty to charges of selling cocaine in amounts of .8 grams, .9 grams, and .4 grams to an undercover officer.  At the hearing, the Petitioner admitted guilt by specifically stating, "I'm guilty of these crimes."  However, the Petitioner hesitated when

asked whether trial counsel advised him of "all possible legal defenses." The Petitioner stated, "I just feel like, you know, I didn't have enough time to prepare myself because I've been incarcerated." Following further questioning by the trial court, the Petitioner again stated that he was guilty and that he wished to accept the plea agreement in which he would receive an effective twelve-year sentence to serve in the Tennessee Department of Correction.

The petitioner timely filed a petition for post-conviction relief, alleging that his guilty plea was not knowingly and voluntarily entered into because it was the result of the ineffective assistance of trial counsel. After the appointment of counsel, an evidentiary hearing was held. At the evidentiary hearing, the State moved to dismiss the Petitioner's petition for post-conviction relief because the petition was not sworn. Post-conviction counsel acknowledged that he did not submit an amended petition for post-conviction relief because he believed that the petition was "rather well put together." He admitted that had he been looking more closely at the form instead of the substance of the petition, he would have noticed the mistake. At that time, the post-conviction court allowed the Petitioner to swear under oath that "the information [he] placed in [his petition for post-conviction relief] is the truth, the whole truth and nothing but the truth subject to the penalties of perjury."

Trial counsel testified that he was appointed to represent the Petitioner and that he represented the Petitioner at the hearing in which the Petitioner pled guilty. He admitted that he only met with the Petitioner two times but stated that he talked to the Petitioner on the telephone three times. The Petitioner was incarcerated during the entirety of the preparation of his case. Trial counsel remembered that most of the conversations with the Petitioner related to the Petitioner's mother and that he would simply tell the Petitioner his opinion about the case and that the Petitioner "really wouldn't ask any questions."

The Petitioner initially wanted to have a jury trial; therefore, trial counsel reviewed the discovery materials for the Petitioner's case and discussed the discovery materials with the Petitioner but did not send the Petitioner a copy of the discovery materials. Trial counsel discussed possible defenses that he could pursue if the Petitioner had a jury trial. The Petitioner was particularly interested in pursuing an entrapment defense; however, trial counsel discussed this defense with the Petitioner and told the Petitioner that he did not have a valid entrapment defense. Trial counsel did not believe that the Petitioner had any other viable defenses because the drug transactions were recorded on a video surveillance tape. After viewing the tape, he told the Petitioner that he should accept the plea agreement that was offered by the State. Trial counsel told the Petitioner that he would likely be classified as a Range II offender and discussed "the possible sentence that he could receive" and the rights that he would lose if he pled guilty. The Petitioner eventually agreed to accept the plea agreement.

The Petitioner never told trial counsel that he felt like he was being pressured into accepting the plea agreement; however, trial counsel remembered that the Petitioner was upset about his treatment at the Tennessee Department of Correction. He also remembered that the Petitioner may have had some trouble understanding his options and that, on the day the Petitioner pled guilty, he discussed the case with the Petitioner and the Petitioner's family in order to help him understand what was happening.

On cross-examination, trial counsel identified the State's notice of request for enhanced punishment and a copy of the plea offer. The State's notice indicated that the Petitioner had four prior felony convictions. Trial counsel remembered that on the day of the offense, the Petitioner was on parole; therefore, he would likely receive a mandatory consecutive sentence in his case. Trial counsel stated that the Petitioner indicated that "he was a slow learner;" however, trial counsel believed that everything was explained to the Petitioner "very thoroughly" and that the Petitioner understood. He stated that the main problem with pursuing an entrapment defense was that the Petitioner would have to admit that he committed the crime. In order to prevail with this defense, trial counsel would then have to argue that the Petitioner did not have the propensity to commit the crime when the Petitioner was charged with selling cocaine on three different dates.

On re-direct examination, trial counsel stated that the Petitioner initially wanted to know the identity of the undercover informant but that they discussed the fact that the plea offer would not be available if the identity of the informant was revealed. He remembered that he spoke with the Petitioner's mother two or three times and that he talked to the Petitioner's mother about the Petitioner's ability to understand the situation. Trial counsel did not disclose what the Petitioner's mother said about the Petitioner. Trial counsel stated that the Petitioner "was able to understand things throughout the course of [his] representation."

The Petitioner testified that he did not talk to trial counsel on a "regular basis." He remembered that the first time he spoke with trial counsel, trial counsel told him that the State was offering a 12-year sentence plea agreement. The Petitioner stated that he told trial counsel that he wanted to serve less time but that trial counsel did not really respond to his request. He stated that the rest of the conversations with trial counsel only lasted fifteen or twenty minutes. He remembered that trial counsel told him that the identity of the witnesses did not matter because the person who tested the drugs, Steve Davidson, and Gary Davidson were going to testify. He stated that he felt "trapped" because he did not feel like trial counsel was interested in pursuing a defense for him. He did not receive any of the discovery materials from trial counsel, and he only talked to counsel on the telephone.

He did not believe that trial counsel adequately investigated his case. He did not believe that trial counsel was even preparing a defense strategy for him in the event that he decided to go to trial even though he repeatedly told trial counsel that he did not want to plead guilty. The Petitioner stated, "I would liked to have seen a jury" because "I wanted the jury to see the State's witnesses." However, he felt like trial counsel was pushing him to accept the plea agreement and that trial counsel kept telling him that he would receive a 30-year sentence if he did not plead guilty.

The Petitioner stated that his "education is real low" and that he can only "read decent to understand certain things." He admitted that he filed his own petition for post-conviction relief but stated that another inmate helped him draft the document. He complained that trial counsel did not explain the guidelines of the plea agreement with him and that he could not read or understand the documents.

On cross-examination, the Petitioner stated that he understood post-conviction counsel's questions as opposed to trial counsel's and the trial court's questions because post-conviction counsel "went over things properly with me." He admitted that he told the trial court that he was not pressured into accepting the plea agreement. He also admitted that he told trial counsel that he wanted the guilty plea to include a lesser sentence. He admitted that he was selling cocaine but stated, "I ain't no successful cocaine dealer. I smoke crack." He stated that he was only selling the cocaine to "break [him] some off." He pled guilty because trial counsel told him that he was "facing 30 years." He admitted that his main concern was that he wanted to know the identity of the confidential informant. On re-direct examination, the Petitioner stated that he believed that he was pressured into pleading guilty and that he did not understand what was happening at the hearing.

The Petitioner's mother, Sara Jones, testified that she spoke with trial counsel because the Petitioner wanted her to speak with trial counsel. Trial counsel called her once, but he did not return her telephone calls. In their one conversation, trial counsel simply told her that everything was going to be alright. She stated that she had a stroke and did not understand "a lot of things that was really going on so [she] didn't ever ask him a whole lot of questions." She recalled that on the day of the hearing, trial counsel told them how many years the Petitioner would have to serve if he did not plead guilty. She remembered that she told the Petitioner that she thought he should accept the plea agreement.

Following the post-conviction hearing, the post-conviction court entered an order finding that the Petitioner was not "deceived, pressured, or coerced into entering his guilty plea." The post-conviction court further found that the Petitioner failed to prove that trial counsel was ineffective.

ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegation to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his grounds by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner contends that he pled guilty because counsel advised him that if he did not plead guilty, he would receive a sentence in which he would "definitely serve" at least thirty years in the Department of Correction. Additionally, the Petitioner contends that he did not receive the discovery materials relative to his case and that trial counsel did not adequately prepare or investigate his case. The State responds that the issues on appeal are waived for failure to include a transcript of the post-conviction hearing. In the alternative, the State responds that the Petitioner received the effective assistance of counsel at the guilty

plea hearing and that the Petitioner did not show that, but for counsel's errors, he would not have pled guilty.

We first note that the transcript of the post-conviction hearing was not included in the record on appeal. However, upon order by this court, the record was supplemented to include the transcript of the post-conviction hearing.

The Petitioner admitted guilt at the guilty plea hearing and stated that he wished to plead guilty in order to avoid a longer sentence. Indeed, the Petitioner was charged with two Class B felonies and a Class C felony, and records submitted by the State indicated that the State was seeking "enhanced punishment" given the Petitioner's criminal history of four prior felony convictions. Accordingly, he could have been sentenced as a multiple offender with a sentence range for the B felonies of 12-20 years and a release eligibility of thirty-five percent; instead, pursuant to the plea agreement, he was sentenced to twelve years as a standard offender and only had to serve his sentence at thirty percent. Furthermore, his sentences were imposed concurrently with one another pursuant to the plea agreement. Following the advice of counsel and questioning by the trial court, the Petitioner chose to plead guilty. Nothing in the transcript of the guilty plea hearing reflects that he was coerced into pleading guilty or that he believed that trial counsel was inadequate. Additionally, the Petitioner again admitted at the post-conviction hearing that he was guilty of the offenses and that his main concern was obtaining the identity of the State's witnesses. Trial counsel stated that he discussed possible defenses with the Petitioner and that he believed that the Petitioner did not have an adequate defense because the criminal transactions were recorded and available to be submitted as evidence. Following our review, we conclude that the Petitioner has failed to prove that trial counsel was ineffective for failing to investigate his case or that he was pressured into pleading guilty. We additionally conclude that the Petitioner has failed to prove that, but for counsel's alleged errors, he would have insisted on going to trial.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-6-